WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn Young, | No. CV-12-02302-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Liberty Mutual Group Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendant's motion for summary judgment. (Doc. 169). The Court now rules on the motion.

**I.      Background**

This case arises from an injury Plaintiff sustained in November of 2010 while she worked as a nurse for Glencroft Care Center, which is insured by Defendant. (Plaintiff's Statement of Facts ("PSOF"), Doc. 173, at ¶ 1; Doc. 156-1 at ¶ 2). Plaintiff initially sought treatment for her injury on November 22, 2010 at Total Medical Care, an urgent care facility, where she complained of low back and leg pain. (Defendant's Statement of Facts ("DSOF"), Doc. 170 at ¶ 1; Plaintiff's Response to Defendant's Statement of Facts ("PRDSOF"), Doc. 174, at ¶ 1). Plaintiff returned to Total Medical on November 26, 2010, reporting that she felt a "twinge" in her back while lifting at work. (DSOF at ¶ 3; PRDSOF at ¶ 3). Plaintiff was later seen by Dr. Judith Tuck at U.S. Health Workers ("USHW"). (DSOF at ¶ 5; PSOF at ¶ 12).

Plaintiff completed an accident report with her employer on December 6, 2010. (DSOF at ¶ 7; PRDSOF at ¶ 7). Defendant received the claim the next day, December 7, 2010 and assigned the claim to indemnity adjuster Mike Dumas. (DSOF at ¶ 8; PRDSOF at ¶ 8). Mr. Dumas spoke with Plaintiff on December 20, 2010. (DSOF at ¶ 9; PRDSOF at ¶ 9). During the conversation, Plaintiff told Mr. Dumas that she pushes and pulls heavy carts and helps move heavy patients, that she had been off work since November 18, 2010, and that she was released to modified duty on November 29, 2010. (*Id.*). Apparently unbeknownst to Mr. Dumas, Plaintiff was terminated from her job for insubordination on December 21, 2010, after which she received unemployment benefits from the state until she moved to Missouri in early 2012. (DSOF at ¶¶ 10, 41; PRDSOF at ¶¶ 10, 41).

Dr. Tuck continued to treat Plaintiff through January 24, 2011, when Dr. Tuck released Plaintiff to work without restrictions and referred Plaintiff to a pain management specialist, Dr. Otto Uhrik. (DSOF at ¶¶ 11, 25; PRDSOF at ¶¶ 11, 25). On April 28, 2011, Mr. Testini petitioned the ICA for permission to change doctors from Dr. Urik to Dr. Teny McLean, a spinal surgeon. The ICA approved the change in physicians on May 9, 2011. (DSOF at ¶ 35; PRDSOF at ¶ 35; PSOF at ¶ 19; DRPSOF at ¶ 19). On May 17, 2011, Plaintiff again requested permission to change physicians to Dr. Mark L. Williams, a pain specialist. (DSOF at ¶ 15; PRDSOF at ¶ 15). Defendant objected to this change, but the ICA eventually approved it. (DSOF at ¶¶ 17, 40; PRDSOF at ¶¶ 17, 40). Dr. Williams never treated Plaintiff. (DSOF at ¶ 18; PRDSOF at ¶ 18).

Mr. Dumas initially accepted Plaintiff's claim in January 28, 2011, but disputes eventually arose and the parties ended up litigating before the Industrial Commission of Arizona ("ICA"). The parties signed a stipulation of benefits on September 23, 2011, which an ICA Administrative Law Judge ("ALJ") approved on October 6, 2011. (DSOF at ¶ 16; PRDSOF at ¶ 16). Defendant, however, did not pay the agreed-to award until November 11, 2011, and only after Plaintiff filed a bad faith claim with the ICA. (DSOF at ¶ 53; PRDSOF at ¶ 53; PSOF at ¶ 43; DRPSOF at ¶ 43).

After referring Plaintiff to an independent medical examiner ("IME"), who opined that Plaintiff had reached maximum medical improvement ("MMI") and did not sustain any permanent partial disability as a result of her injury, Defendant closed the claim on September 21, 2012, and the claim remains closed and resolved. (DSOF at ¶¶ 21, 22, 24; PRDSOF at ¶¶ 21, 22, 24).

Plaintiff filed suit in state court, and Defendant removed to this Court on October 29, 2012. Defendant moved for summary judgment. The motion is fully briefed and oral argument was held on March 10, 2015.

## II.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A)&(B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. To be entitled to summary judgment, the movant must support its motion with evidence that would entitle it to a directed verdict at trial, *id.* (citing Fed. R. Civ. P. 50(a)); i.e., the party must show that "a reasonable jury would not have sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The burden then shifts to the non-movant to establish the

existence of material fact. *Celotex Corp.*, 477 U.S. at 323. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**III. Bad Faith**

    **A. Legal Standard**

"The tort of bad faith arises when the insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279-80 ¶ 20 (Ariz. 2000) (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (1981)). The tort recognizes that "in buying insurance[,] an insured usually does not seek to realize a commercial advantage but, instead, seeks protection and security from economic catastrophe." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986). However, "[b]ecause of the disparity in bargaining power and the nature of the contract, the insurer receives both premium and control." *Id.*

In the case of first-party insurance, "the insurer sets the conditions for both presentment and payment of claims." *Id.* This dual role gives the insurer "an almost adjudicatory responsibility." *Id.* "Although the insured is not without remedies if he disagrees with the insurer, the very invocation of those remedies detracts significantly from the protection or security which was the object of the transaction." *Id.* Thus, the contract between insurer and insured gives rise to the insurer's obligation "implicit in the contract and the relationship . . . to play fairly with its insured." *Id.*; *see also Zilisch*, 995

1  P.2d 279-80 ¶ 20 (an insurer owes its insured duties of equal consideration, fairness, and
2  honesty). Accordingly, an insurer may be liable for bad faith even if it has not breached
3  an express covenant of the insurance contract. *See Deese v. State Farm Mut. Auto. Ins.*
4  *Co.*, 838 P.2d 1265, 1270 (Ariz. 1992).

5  An insured alleging a bad faith claim against his insurer must show (1) the insurer
6  acted unreasonably and (2) the insurer knew or recklessly disregarded the fact that its
7  conduct was unreasonable. *Zilisch*, 995 P.2d at 280 ¶ 22; *Noble*, 624 P.2d at 868. "The
8  first prong of the test for bad faith is an objective test based on reasonableness. The
9  second prong is a subjective test, requiring the plaintiff to show that the defendant
10 insurance company committed consciously unreasonable conduct." *Milhone v. Allstate*
11 *Ins. Co.*, 289 F. Supp. 2d 1089, 1094 (D. Ariz. 2003) (citing *Trus Joist Corp. v. Safeco*
12 *Ins. Co.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986)).

13 In *Zilisch*, the Arizona Supreme Court confirmed that two types of insurer
14 misconduct may give rise to a bad faith claim. First, an insurer may be liable for bad faith
15 if it denies a claim that was not fairly debatable. *Zilisch*, 995 P.2d at 280 ¶ 22; *see also*
16 *Deese*, 838 P.2d at 1269. The question of whether an insurer believed the claim to be
17 fairly debatable is generally a fact question for the jury, although a court may rule on the
18 issue as a matter of law "[i]f the plaintiff offers no significantly probative evidence that
19 calls into question the defendant's belief in fair debatability." *Young v. Allstate Ins. Co.*,
20 296 F. Supp. 2d 1111, 1116 (D. Ariz. 2003); *see also Bronick v. State Farm Mut. Auto.*
21 *Ins. Co.*, 2013 WL 3716600, at *6 (D. Ariz. July 15, 2013).

22 Second, an insurer is liable for bad faith if it acted unreasonably in processing a
23 claim, regardless of the claim's merits. *Zilisch*, 995 P.2d at 280 ¶ 22 ("[I]f an insurer acts
24 unreasonably in the manner in which it processes a claim, it will be held liable for bad
25 faith 'without regard to its ultimate merits.'" (quoting *Deese*, 838 P.2d at 1270)). Thus,
26 an insurer commits bad faith if during the "investigation, evaluation, and processing of
27 the claim, the insurer acted unreasonably and either knew or was conscious of the fact
28 that its conduct was unreasonable." *Id.*

**B.     Discussion**

The Court first turns to Defendant's position that Plaintiff's "complaints regarding Liberty's timing of payments and investigation of her claim are all irrelevant, because she was never entitled to disability benefits in the first place." (Doc. 175 at 6). In short, Defendant argues that entitlement to benefits is an "implicit" requirement of a bad faith claim. (Doc. 175 at 4). This argument is premised on an incorrect reading of the law. The Arizona Supreme Court made clear in *Zillisch* that an insurer that acts unreasonably in processing a claim is liable for bad faith "without regard to its ultimate merits." *Zilisch*, 995 P.2d at 280 ¶ 22. Defendant's alleged "dragging [of] its feet" with regard to dispensing payment is therefore not "irrelevant" or "illusory" as Defendant claims. (*See* Doc. 175 at 5, 6). Rather, the opposite is true—the ultimate validity of the insured's claims is irrelevant to determining whether an insurer acted reasonably in processing those claims.

Next, the Court turns to Plaintiff's allegation that Defendant unreasonably delayed payment of the stipulation signed by the parties on September 23, 2011. The parties do not appear to dispute the facts: the parties signed the stipulation on September 23, 2011; the ALJ approved it on October 6, with a statement that the approval would be final in thirty days; Defendant did not pay the stipulation by the November 6 "finality" date; Plaintiff filed a bad faith claim at the ICA on November 10; and Defendant paid the stipulation on November 11.

Defendant explains that it was justified in waiting nearly six weeks after signing the stipulation to pay Plaintiff because the stipulation was not final until thirty days after the ALJ approved it and Defendant "was waiting for the award to become final." (Doc. 169 at 14).[1] Plaintiff, on the other hand, argues that Defendant was not justified in

---

[1] Defendant also suggests that the delay was justified because Plaintiff was simultaneously receiving unemployment benefits. (Doc. 169 at 10, 12, 14). Defendant provides no evidence, however, that this was the reason it delayed payment of the stipulated amount. Indeed, it appears that Defendant did not learn about Plaintiff's unemployment benefits until it took Plaintiff's deposition. (*See* Doc. 169 at 12 ("Plaintiff admitted at her recent deposition that she was collecting unemployment benefits from the time she was fired in December 2010 through early 2012 when she moved to Missouri.")).

- 6 -

waiting for the appeals time to run because Plaintiff waived her right to appeal and because Arizona law does not require stipulations to be reviewed. (Doc. 172 at 9). Moreover, Plaintiff points out that Defendant did not, in fact, pay the stipulated amount until after Plaintiff filed a bad faith claim with the ICA, which the ICA granted.

The Court concludes that a reasonable jury could accept either party's interpretation of the facts. On one hand, Defendant's payout came only five days after the thirty day "finality" date had passed, so a reasonable jury could conclude that the delay was minor and the result of a simple oversight. On the other hand, given that Defendant itself signed the stipulation and knew that Plaintiff had waived her right to appeal, a reasonable jury could also find that Defendant's claim that it was "waiting for the award to become final" is mere pretext. A reasonable jury could also infer Defendant's ill intent from the fact that Defendant did not actually pay the stipulation until Plaintiff filed a bad faith claim with the ICA. These issues of factual interpretation are quintessential jury questions that preclude summary judgment. The Court will therefore deny Defendant's motion for summary judgment as to the bad faith claim.[2]

## IV.  Punitive Damages

Punitive damages are appropriate "when, *and only when*, the facts establish that defendant's conduct was aggravated, outrageous, malicious or fraudulent." *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986) (citing *Anderson v. Continental Insurance Co.*, 271 N.W.2d 368, 379 (Wis. 1978)). In the context of an insurance bad faith claim, punitive damages may not be awarded "unless the evidence reflects 'something more' than the conduct necessary to establish the tort." *Id.* at 577 (citing *Farr v. Transamerica Occidental Life Insurance Co.*, 699 P.2d 376, 380 (Ct. App. 1984)). Thus, "[i]ndifference to facts or failure to investigate are sufficient to establish the tort of bad faith but may not rise to the level required by the punitive damage rule." *Id.* at 578. In addition to such indifference or failure to investigate, the plaintiff must also show that the insurer was

---

[2] The Court emphasizes that the genuine issues of material fact it finds in this Order do not necessarily represent an exhaustive list of issues that remain for trial.

1  "guided by an evil mind which either consciously sought to damage the insured or acted
2  intentionally, knowing that its conduct was likely to cause unjustified, significant damage
3  to the insured." *Id.* Notably, however, circumstantial evidence is often the only way a
4  plaintiff can prove she is entitled to punitive damages, since an insurer is rarely "willing
5  to take the stand and admit its 'evil mind.'" *See Hawkins v. Allstate Ins. Co.*, 733 P.2d
6  1073, 1081 (Ariz. 1987). "Thus, whether the [insurer] intended to injure the plaintiff or
7  consciously disregarded the plaintiff's rights may be suggested by a pattern of similar
8  unfair practices." *Id.*

9  Plaintiff argues that the multiple instances of Defendant "dragging its feet" show a
10 pattern of similar unfair practices that indicate that Defendant consciously disregarded
11 Plaintiff's rights. In particular, Plaintiff points to Defendant's failure to promptly pay the
12 stipulated-to amount, Defendant's challenge to Plaintiff's change of doctors, and
13 Defendant's late payment of the bad faith penalty. These instances of delaying action by
14 Defendant, Plaintiff argues, show a pattern of similar unfair practices which justify the
15 inference that Defendant acted with the requisite "evil mind" to support punitive
16 damages.

17 In response, Defendant offers justifications for each of these instances of alleged
18 bad faith. Specifically, Defendant argues (again) that it was under no duty to pay the
19 stipulated amount until the ALJ's approval became final. Defendant further argues that
20 Defendant's challenge to Plaintiff's doctor change was reasonable because Plaintiff had
21 no real doctor-patient relationship to begin with. In short, Defendant argues that its
22 actions were reasonable, and therefore Plaintiff cannot show that Defendant acted with an
23 "evil mind."

24 The Court concludes that the evidence Plaintiff presents does not warrant a
25 reasonable inference that Defendant acted with the "evil mind" required by Arizona law
26 to establish punitive damages. The "pattern of similar unfair practices" described by the
27 Supreme Court of Arizona in *Hawkins* was considerably more egregious and widespread
28 than the alleged pattern here. In *Hawkins*, the insurer's former employees testified of the

company's "policy of routine, automatic deductions, regardless of their validity, in valuing an insured's loss." The testimony was that the acts of bad faith were "firmly grounded in corporate policy" and that those policies "denied Hawkins and countless other insureds the actual cash value of their property." Here, however, Plaintiff offers no evidence that Defendant was acting in line with a corporate policy to delay payments or challenge physician changes. At best, Plaintiff's evidence displays a few incidents of unreasonable conduct by Defendant, all specific to Plaintiff's claim. While this evidence may rise to the level of bad faith liability, they do not warrant a reasonable inference of malicious intent by Defendant. The Court will therefore grant Defendant's motion for summary judgment as to Plaintiff's punitive damages claim.

## V. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion for summary judgment, (Doc. 169), is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's bad faith claim will proceed to trial, and Plaintiff's punitive damages claim is dismissed.

Dated this 17th day of March, 2015.

*[signature]*
James A. Teilborg
Senior United States District Judge